IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:07cr70-WHA |
| | ) | |
| COURTNEY JERVONNE CASEY | ) | |

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This cause is before the Court on the *Motion to Suppress* filed by Defendant Courtney Jervonne Casey ("Casey"). *See* Doc. 23, filed May 29, 2007. The Court held a hearing on the motion on June 13, 2007. For the reasons discussed below, the Magistrate Judge recommends that the District Court deny the motion to suppress.

### I. FACTUAL BACKGROUND AND MOTION TO SUPPRESS

On December 21, 2005, Casey was a rear seat passenger in a 2000 Ford Explorer SUV driven by his co-defendant, Demetria Murphy("Murphy"). Murphy and Casey were headed south on Interstate 65 near mile marker 165 in Hope Hull, Alabama when mechanical problems forced Murphy to pull off the roadway. Soon thereafter, Trooper Shawn Loughridge saw the car while he was on routine patrol. Trooper Loughridge pulled over to assist what he believed to be motorists in distress. The occupants of the car told Trooper Loughridge the SUV ran out of gas, and they just recently put gasoline in the SUV but it still would not start. Trooper Loughridge suggested the fuel shut off switch in the rear cargo area might account for the mechanical problem. Murphy chose to open the rear cargo door of the

Explorer to check the fuel shut off switch. When Murphy opened the rear cargo door, Trooper Loughridge saw, in plain view, the butts of two shotguns. Trooper Loughridge, for his own safety, pulled the weapons from underneath other items strewn across the cargo area and saw one of the shotguns had a short barrel. Further, military ballistic body armor was underneath both shotguns. Trooper Loughridge immediately arrested the defendants. In light of the short barreled rifle, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") sent two agents to investigate. ATF Agents Timothy Fitzpatrick and Dwight Brown discovered Casey is a felon whose rights to possess a firearm were taken and the unregistered shotgun was indeed shorter than the law permits without registration. ATF Agents Fitzpatrick and Brown gave Casey his Miranda warnings. Casey acknowledged verbally he understood his rights against self incrimination. Thereafter, Casey made several incriminating statements in response to police questions about the firearms.

On April 4, 2007, the Grand Jury for the Middle District of Alabama returned a two count indictment against Casey. *See* Doc. 1. Count 6 of the indictment alleges Casey is a felon who thereafter possessed two firearms in violation of federal law. Count 7 of the indictment alleges one of the firearms possessed by Casey was a short barreled shotgun or, in the vernacular, a sawed off shotgun not registered under federal law. Casey argues the discovery of the firearms and his incriminating statements thereafter to law enforcement violate his rights under the Fourth and Fifth Amendments sufficiently to bar the admission of the firearms and his statement.

## II. ISSUES PRESENTED

The admissibility of the firearms and the statements against Casey hinges upon the answers to three questions: (1) Does Casey have standing to contest the search? (2) Assuming Casey has standing, did the discovery of the firearms violate the Fourth Amendment? (3) Do the statements made by Casey after Trooper Loughridge saw the firearms contravene the Fifth Amendment? The facts and law clearly demonstrates the answer to each of the three questions is, no.

## III. DISCUSSION AND ANALYSIS

**A.     STANDING**

The government argues Defendant Casey does not have standing to challenge the search of the Ford Explorer.[1] Fourth Amendment rights are personal rights which may not be vicariously asserted. *Rakas v. Illinois*, 439 U.S. 128, 133-34, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978); *Lenz v. Winburn*, 51 F.3d 1540, 1549 (11th Cir. 1995). "[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *Minnesota*, 525 U.S. at 88, 119 S.Ct. at 472; *see also U.S. v. Chaves*, 169 F.3d 687, 690 (11th Cir. 1999) (citing *Minnesota*). "Thus, in a variety of circumstances, courts

---

[1] Although the United States labels this inquiry as a question of standing, the Supreme Court has stated the question "is more properly placed within the purview of substantive Fourth Amendment law than within that of standing." *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469, 472, 142 L.Ed.2d 372 (1998) (quoting *Rakas v. Illinois*, 439 U.S. 128, 140, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)); *see also U.S. v. Chaves*, 169 F.3d 687, 690 (11th Cir. 1999) (citing *Minnesota v. Carter*).

have held that a person does not have a reasonable expectation of privacy in another's belongings." *Lenz*, 51 F.3d at 1549. Furthermore, "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Chaves*, 169 F.3d at 690 (quoting *Rakas*, 439 U.S. at 134, 99 S.Ct. at 425).

Casey does not set forth any fact beyond his presence in the SUV to show he has standing to attack the search. Mere presence as a passenger within a vehicle alone is not sufficient to establish standing to contest a law enforcement search of the vehicle. *See Rakas*, 439 U.S. at 148, 99 S.Ct. at 433 (passengers had no standing to object to the search of another's car); *see also United States v. Chanthasouxat*, 342 F.3d 1271, 1273 n.1 (Defendant had no expectation of privacy in the van in which he was a passenger.). Moreover, where a defendant in a motion to suppress fails to allege sufficient facts to establish standing, a court may dismiss a suppression motion without an evidentiary hearing. *United States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir. 2000) (citing *United States v. Sneed*, 732 F.2d 886, 888 (11th Cir. 1984)). An evidentiary hearing was necessary to resolve the Fifth Amendment claim and co-defendant Murphy's motion to suppress the same firearms.[2] As Casey's Fifth Amendment claim arises from and is inextricably intertwined with the Fourth Amendment claim, the Court held an evidentiary hearing which shed no further light on the standing issue.

---

[2] Co-defendant Murphy as the driver of the Ford Explorer has standing to contest the very same search.

Casey did not show he had a legitimate expectation of privacy in the Ford Explorer and does not assert a property or possessory interest in the vehicle. By itself, Casey's presence in the vehicle is not sufficient to establish standing to challenge the propriety of any search. Thus, Casey fails to prove any violation of his Fourth Amendment rights.

**B.    FOURTH AMENDMENT CLAIMS**

Casey argues the firearms were found after Trooper Loughridge conducted an impermissible search under the Fourth Amendment, without probable cause, and without a warrant. Further Casey argues, when Loughridge refused to leave when requested, the situation turned into a traffic stop. *See, e.g., Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Contraband in plain view falls outside the protection of the Fourth Amendment. "Under [the plain view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993) (citations omitted). "The rationale of the plain-view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no 'search' within the meaning of the Fourth Amendment--or at least no search independent of the initial intrusion that gave the officers their vantage point." *Id.* The plain view exception to the Fourth Amendment applies so long as officers do not violate the Fourth Amendment to arrive at their vantage point to see the

evidence. *Horton v. California*, 496 U.S. 128, 136, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990); *see also United States v. Bishop*, 338 F.3d 623, 626 (6th Cir. 2003) (citing *Horton*). Trooper Loughridge did no more than act as a good Samaritan along the public roadway and happened to see two shotguns in plain view. Defendant Murphy voluntarily exposed the firearms to Trooper Loughridge when she opened the cargo door of the Ford Explorer. *See, e.g. United States v. Santiago*, 410 F.3d 193, 201 (5th Cir. 2005) (Defendant gave deputies consent to enter home and firearm was seen in plain view...though the court did not get the sense from the record that deputies entered the home operating under the belief they would discovery a cache of weapons, the court has not asked law enforcement to ignore the significance of items observed in plain view); *see also Texas v. Brown*, 460 U.S. 730, 740, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) ( "The general public could peer into the interior of [defendant's] automobile from any number of angles; there is no reason [the officer] should be precluded from observing as an officer what would be entirely visible to him as a private citizen. There is no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers.") (citations omitted).

Further, none of the passengers had a valid pistol permit. It is a violation of Alabama law to transport a firearm in a car without license therefore Trooper Loughridge had the authority to seize the firearms without more as evidence of a crime. *See* Ala. Code § 13A-11-73. The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches an seizures, shall not be

violated." None of the concerns behind the Fourth Amendment are present in the facts. Trooper Loughridge took reasonable steps to assist motorists in distress. But for Defendant Murphy voluntarily opening a door which set contraband in plain view, the evidence would not have been found by Trooper Loughridge. As such, the Court concludes no "search" took place and therefore, there is no violation of the Fourth Amendment.

**C.   FIFTH AMENDMENT CLAIMS**

Casey alleges various incriminating statements he made after Trooper Loughridge found the firearms were taken in contravention of the Fifth Amendment. Defendant Casey acknowledges the alleged Fifth Amendment violations are completely dependent upon his Fourth Amendment claims as he asserts his statements are the fruit of the illegal search and seizure. Casey argues any evidence obtained as a result of the illegal search and seizure was "fruit of the poisonous tree," and therefore should be suppressed. *See, e.g. Chanthasouxat*, 342 F.3d at 1280 (citing *Wong Sun v. United States*, 371 U.S. 471, 484-85, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963)) (stating the general rule that evidence gathered as a result of an unconstitutional stop must be suppressed). The Court finds the items were in plain view, thus, no search took place. Even if there was a search, Defendant Murphy consented to such search when she opened the rear cargo door of the Ford Explorer to let Trooper Loughridge find the fuel shut off valve. As a result, the "fruit of the poisonous tree" concept does not apply and all statements by Casey should therefore be fully admissible at trial.

Furthermore, no other Fifth Amendment rights have been implicated. The Fifth Amendment provides that "[n]o person... shall be compelled in any criminal case to be a

witness against himself." Custodial police interrogations trigger Fifth Amendment concerns. *New York v. Quarles*, 467 U.S. 649, 654, 104 S.Ct. 2626, 2630, 81 L.Ed.2d 550 (1984). Trooper Loughridge took Casey into custody immediately after Trooper Loughridge saw the firearms. Post-arrest, Trooper Loughridge had duty to tell Casey about his rights against self incrimination and to the assistance of counsel. *Miranda v. Arizona*, 384 U.S. 436, 467-68, 86 S.Ct. 1602, 1624-25, 16 L.Ed.2d 694 (1966). Trooper Loughridge gave Casey his Miranda warnings and obtained an oral waiver of Miranda rights. *See id*. Fifth Amendment rights are personal rights which may be set aside if a person waives their rights. No threats, force, inducements or any other impermissible acts made Casey waive his Fifth Amendment claims. The statements, from a constitutional perspective, should therefore be fully admissible at trial.

### IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the *Motion to Suppress* (Doc. 23) filed by Defendant Casey be **DENIED**.

It is further **ORDERED** that the parties are **DIRECTED** to file any objections to the said Recommendation not later than **June 28, 2007**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the

Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 15th day of June, 2007.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE